UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LERONE N.,[1]

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

6:20-cv-6172 (JJM)

       This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final

determination of the Commissioner of Social Security that plaintiff was not entitled to

supplemental security income ("SSI") benefits prior to September 24, 2019.[2] Before the court are

the parties' cross-motions for judgment on the pleadings [18, 19].[3] The parties have consented

to my jurisdiction [21]. Having reviewed their submissions [18, 19, 20], the Commissioner's

motion is granted and plaintiff's motion is denied.

---

[1]      In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only the first name and last initial.

[2]      Plaintiff's age category changed on September 24, 2019. The Commissioner determined that plaintiff was disabled as of that date. Plaintiff does not challenge this finding.

[3]      Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination (upper corner of the page).

## BACKGROUND

The parties' familiarity with the 863-page administrative record [14] is presumed. Further, the parties have comprehensively set forth in their papers the plaintiff's treatment history and the relevant medical evidence. Accordingly, I reference below only those facts necessary to explain my decision.

Plaintiff filed for benefits in March 2015, when he was 45 years old, alleging a disability beginning on January 1, 2015, due to: chronic nerve conditions, a number of mental health diagnoses, hypertension, and bilateral knee conditions.  Administrative Record [14], pp. 208, 233.  This matter was previously remanded from this court in order for the Administrative Law Judge ("ALJ") to consider an October 2016 functional assessment from plaintiff's treating physician, Dr. Berthollet Bavibidila.  In that assessment, Dr. Bavibidila opined that plaintiff's pain due to his cervical and lumbar spine and right shoulder conditions would "frequently interfere with his attention and concentration needed to perform even simple tasks during a typical workday".  Id., pp. 645, 647-48 (Decision and Order).  In its decision, this court explained:

> "It is the ALJ's obligation to properly support her opinion with substantial evidence.  In particular, the treating physician rule in effect at the time the ALJ issued her decision required the ALJ to give controlling weight to the opinions of Dr. Bavibidila, or otherwise explain why those opinions were rejected.   While the ALJ met her burden for the December 2015 opinion and its supplement, she failed to meet her burden for the October 2016 opinion relating to Plaintiff's pain interfering with his attention and concentration. . . . Rejecting Dr. Bavibidila's October 2016 opinion falls within the ALJ's discretion, so long as she provided 'good reasons' for doing so. . . . However, the ALJ failed entirely to mention the October 2016 opinion, let alone provide reasons for not giving it controlling weight pursuant to the treating physician rule.  Accordingly, the Court finds that remand for further administrative proceedings is necessary."

Id., pp. 647-48.

In addition, this court directed the ALJ to "fully consider the limitations associated with Plaintiff's cervical spine impairments evidenced in the medical record" and, "in particular", those "functional limitations noted by consultative examiner Dr. Harbinder Toor in his May 2015 source statement". Id., p. 649.

An administrative hearing was held on September 24, 2019 before ALJ Roxanne Fuller. Id., pp. 581-602 (transcript of hearing). Both plaintiff, who was represented by an attorney, and a vocational expert testified. Id., pp. 584-601. On November 25, 2019, ALJ Fuller issued a decision finding that plaintiff was not disabled prior to September 24, 2019 but became disabled on that date due to a change in his age category. Id., pp. 562-74. In reaching that determination, ALJ Fuller found that plaintiff's severe impairments were degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the right shoulder with rotator cuff tendinopathy; history of right knee ACL tear and degenerative changes; diabetes mellitus; depression; anxiety; unspecified psychotic disorder; and substance abuse". Id., p. 565.[4]

ALJ Fuller found the plaintiff had the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR §416.967(a), with the following additional limitations:

> "[O]ccasional climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasional balance, stoop, crouch, kneel, crawl; frequent reaching in front with the right dominant arm; occasional reaching overhead with the right dominant arm; frequent handling objects and fingering with the right dominant hand; occasional exposure to moving mechanical parts; occasional operating a motor vehicle; occasional exposure to unprotected heights; able to perform routine and repetitive tasks; have only occasional interaction with the public."

---

[4]     The plaintiff does not challenge these findings.

Id., p. 567.  ALJ Fuller relied upon testimony from the vocational expert to find that prior to

September 24, 2019, plaintiff could have performed the requirements of three sedentary

occupations that exist in significant numbers in the national economy:  food and beverage order

clerk (222,000 jobs nationally); table worker (23,000 jobs nationally); and surveillance system

monitor (96,000 jobs nationally).[5]  Id., p. 573.  Aside from these three positions, however, the

vocational expert was unable to identify any other jobs that a plaintiff with this RFC could

perform.  Id., p. 601.

      Plaintiff's first argument is that substantial evidence does not support ALJ

Fuller's treatment of Dr. Bavibidila's October 2016 opinion.[6]  Plaintiff's Memorandum of Law

[19-1], pp.  12-17.  Specifically, plaintiff argues that the ALJ's citation to "intact attention and

concentration" and her reliance on "conservative treatment" are not "good reasons" sufficient to

---

[5]     ALJ Fuller erred when she included the food and beverage order clerk position in her decision.  That position was identified by another vocational expert at a prior hearing, held October 26, 2016.  _See_ id., pp. 66-67.  Although plaintiff does not challenge this finding, I note that the vocational expert who testified at the September 24, 2019 hearing stated that plaintiff could perform the following jobs: document preparer (15,000 jobs available nationally); table worker (2,500 jobs available nationally); and surveillance system monitor (3,800 jobs available nationally).  Id., pp. 600-01.  Because these jobs, collectively, represent greater than 9,000 jobs available nationally, I find that ALJ Fuller's error was harmless and is not, by itself, a basis for remand.  _See, e.g._ Sanchez v. Berryhill, 336 F.Supp.3d 174, 177-78 (W.D.N.Y. 2018) (finding that the four jobs that the VE identified, totaling 9,046 jobs available nationally, is "significant"); _see also_ Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) ("[r]emand is unnecessary, however, where application of the correct legal standard could lead to only one conclusion") (internal quotation and citation omitted).

[6]     The majority of plaintiff's argument section focuses on the sitting limitations opined by Dr. Bavibidila but rejected by ALJ Fuller.  This court previously determined, however, that ALJ Fuller properly supported her treatment of Dr. Bavibidila's opinion concerning sitting limitations.  Administrative Record [14], p. 647 (noting that "the ALJ met her burden" to explain the weight she assigned to Dr. Bavibidila's December 2015 opinion and its supplement).  I decline to disturb this finding and limit my opinion to those issues previously identified by this Court.  _See_ Frank K. v. Commissioner, 371 F.Supp.3d 163, 170 (D.Vt. 2019) ("courts in the Second Circuit have recognized that the law-of-the-case doctrine applies to administrative agencies on remand and prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings" (internal citations and quotations omitted)).

reject Dr. Bavibidila's treating physician[7] opinion.  Id., pp 15-16.  Secondly, plaintiff argues that

the RFC crafted by ALJ Fuller was based upon her lay opinion, rather than upon any medical

opinion in the record, and is therefore not supported by substantial evidence.  Id., pp. 17-23.

Specifically, plaintiff argues that ALJ Fuller erred by rejecting consultative examiner Yu-Ying

Lin, Ph.D.'s opinion[8] that plaintiff is markedly limited in relating adequately with others because

he was able to get along with friends and family, and "did not act uncooperatively with his

clinicians".  Id., p. 22.

            I disagree with plaintiff that ALJ Fuller failed to support her treatment of Dr.

Bavibidila's opinion with substantial evidence, or that she improperly applied the treating

physician rule.  Moreover, while I agree that ALJ Fuller improperly assessed Dr. Lin's opinion

that plaintiff had marked limitations in relating adequately to others, I find that this error was

harmless.  Further, as pointed out by the Commissioner, plaintiff failed to point to any evidence

---

[7]       "The Social Security Administration adopted regulations in March 2017 that effectively abolished
the treating physician rule; however, it did so only for claims filed on or after March 27, 2017." Montes v.
Commissioner of Social Security, 2019 WL 1258897, *2 n. 4 (S.D.N.Y. 2019). This claim was filed
before that date.

[8]       Plaintiff also argues that aspects of the physical portion of the RFC are unsupported by
substantial evidence and based, instead, upon ALJ Fuller's lay opinion.  However, these aspects of the
RFC were essentially unchanged from the RFC incorporated into ALJ Fuller's prior Decision, which this
court previously left untouched, except as outlined in its November 19, 2018 Decision and Order.  I
therefore decline to disturb the prior findings of this Court. See, n. 5, supra.  ALJ Fuller added to the RFC
in her November 25, 2019 Decision the limitation to "only occasional interaction with the public".
Compare Administrative Record [14], p. 567 to 658.

            In addition, ALJ Fuller did not incorporate into the RFC any additional limitation based upon Dr.
Toor's opinion that plaintiff has moderate limitations for "twisting of the cervical spine".  However,
plaintiff did not challenge that omission, and does not even mention this limitation in the argument
section of his Memorandum of Law. See Plaintiff's Memorandum of Law [18-1], p. 20 ("Dr. Toor opined
that the Plaintiff had moderate to marked limitation in standing, walking, bending, and lifting; pain would
interfere with his balance; and he had moderate limitation for sitting a long time and performing fine
motor activities with the right hand.").

demonstrating that more significant limitations were warranted.  Therefore, for the reasons stated below, I deny the plaintiff's motion and grant the Commissioner's motion.

## ANALYSIS

### A.        Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process.  *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

### B.        Was ALJ Fuller's Determination Concerning Limitations Due to Pain Supported by Substantial Evidence?

It is well settled that the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision" and an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order). *See also* Young v. Berryhill, 2018 WL 2752443, *2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC determination").  "The question is, instead, whether the ALJ's conclusion was 'supported by the

record as a whole.'" <u>Nieves v. Commissioner of Social Security</u>, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (*quoting* <u>Tricarico v. Colvin</u>, 681 Fed. Appx. 98, 101 (2d Cir. 2017) (Summary Order)).

A treating physician's opinion is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record". 20 C.F.R. §§404.1527(c)(2); 416.927(c)(2). If the treating physician's opinion does not meet this standard, the ALJ may discount it, but is "required to explain the weight it gives to the opinions of a treating physician . . . . Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand". <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999). *See also* 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). "The ALJ must consider, *inter alia*, the '[l]ength of the treatment relationship and the frequency of examination'; the '[n]ature and extent of the treatment relationship'; the 'relevant evidence . . . particularly medical signs and laboratory findings,' supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." <u>Burgess v. Astrue</u>, 537 F.3d 117, 129 (2d Cir. 2008) (*citing* 20 C.F.R. §404.1527(d), now (c)).

Here, ALJ Fuller adequately supported her decision to assign "little weight" to Dr. Bavibidila's opinion that plaintiff's pain would frequently interfere with plaintiff's attention and concentration. Administrative Record [14], p. 570. Analysis of ALJ Fuller's Decision demonstrates that she considered each of the <u>Burgess</u> factors to arrive at her determination. She specifically noted that Dr. Bavibidila was plaintiff's "primary care" physician. <u>Id.</u>, p. 568. Secondly, she outlined Dr. Bavibidila's treatment of plaintiff, including significant gaps in treatment. *See* <u>id.</u>, pp. 568-69. Third, she identified and discussed Dr. Bavibidila's findings on

examination, the findings of specialists with whom plaintiff treated, and results of diagnostic

tests (such as MRIs and EMGs).  Id., pp. 567-70.  Finally, after discussing the medical evidence

at length, she explained that she assigned "little" weight to Dr. Bavibidila's opinion "because it

is not consistent with the record or Dr. Bavibidila's own findings".  Id., p. 570.  She then

provided several examples of these inconsistencies:

> "For instance, Dr. Bavibidila found[9] the claimant's attention was
> within normal limits and his memory was grossly intact during
> exams and despite the claimant's report of persistent pain . . . .  Dr.
> Bavibidila also noted that the claimant had no signs of apparent
> distress and he was able to communicate appropriately during
> exams. . . .  The psychological examiner noted that the claimant had
> some difficulty concentrating during conversations, but he could
> perform simple calculations, simple counting, and serial threes . . .
> .  These factors suggest the claimant attention or concentration is
> not as limited by pain as Dr. Bavibidila opined.  Even so, the
> residual functional capacity assessment adopted here limits the
> claimant to performing routine and repetitive tasks."

Id., p. 570.

Accordingly, I find that ALJ Fuller properly considered Dr. Bavibidila's opinion

under the treating physician rule, and that her assignment of little weight to that opinion is

supported by substantial evidence.

---

[9]     Although ALJ Fuller attributes these findings to Dr. Bavibidila, they are actually findings
contained in the reports of plaintiff's treating neurosurgeon Seth Zeidman, M.D., which are contained in
Dr. Bavibidila's records.  Plaintiff does not identify this error as a basis to challenge ALJ Fuller's
determination.  However, even if she had, I find this error is harmless.  Dr. Zeidman's findings are part of
"the record" to which ALJ Fuller referred. Id., p. 570.  In addition, elsewhere in her Decision ALJ Fuller
correctly attributed these reports to Dr. Zeidman (id., p. 568) and identified Dr. Bavibidila's findings upon
examination (id., p. 568).

**C.      Did ALJ Fuller Err in Her Analysis of Dr. Lin's Opinion Concerning Interactions with Others?**

      By contrast, ALJ Fuller's treatment of Dr. Lin's opinion that plaintiff had marked limitations in relating adequately to others was not supported by substantial evidence. However, this error was harmless.  Further, plaintiff failed to point to any medical evidence in the record demonstrating that more significant limitations were warranted.

      ALJ Fuller assigned Dr. Lin's opinion only "partial" weight and found that, with respect to his ability to relate to others, "the claimant's record during the relevant period did not support such significant limitations".  Id., p. 571.  Specifically, "[r]egarding his social functioning, the claimant did not act uncooperatively with his clinicians and he reported maintain [sic] good social relationships, so the evidence did not support marked limitations".  Id.  ALJ Fuller did not provide citations to the record to support these statements.  However, she included the same statements in her analysis at step 3 with citations to the Administrative Record:

> "In interacting with others, the claimant has mild limitations. According to the claimant, he socialized regularly and reported getting along well with family, friends, and neighbors (Hearing; Exs. B3E; B5F).  Additionally, his clinicians did not observe the claimant to be uncooperative (Exs. B4F; B5F)[10]."

Id., p. 566.

      At his September 24, 2019 hearing, plaintiff testified:

> "Q      Can you briefly describe for the judge the depression symptoms that you're suffering from? . . .
>
> A      I can't do much and I just try to, try to deal with every day as I can, but every day is not the same with the pain that I have and so it puts me in a real depressed mode where I don't – I kind of

---

[10]      Exhibit B3E corresponds to Administrative Record [14], pp. 241-57 (plaintiff's Function Report).
Exhibit B4F corresponds to Administrative Record [14], pp. 364-70 (Dr. Toor's report).
Exhibit B5F corresponds to Administrative Record [14], pp. 371-76 (Dr. Lin's report).

> isolate myself from family, friends and . . . kind of do things from
> the phone if I can. . . .
>
> Q      Okay.  Do you have any difficulties getting along with
> other folks?
>
> A      I try not to, but I, I do have a – oh, I've grown to have a
> low tolerance for a lot of stupid things, stupidity and stuff . . . and
> my emotions may allow me to get agitated or something and . . . as
> long as I'm not around . . . things that just is going to make me
> have a bad day I guess I try to make the most out of it. . . .
>
> Q      Do you ever have ideas of hurting other folks?
>
> A      Oh, at times, sometimes where . . . if I'm cornered, if I'm
> put in a position or if . . . they're just idiots and they're bad
> people."

Administrative Record [14], pp. 592-94.  At his October 26, 2016 hearing, plaintiff testified:

> "Q      Do you get along with others?
>
> A      Yeah, I try to as much as I can. The ones that I can tolerate.
> If someone is not trying to be jokey about my ailment, things that I
> can no longer do."

Id., p. 62.

In his Function Report, completed May 5, 2015, plaintiff stated that he spends

time with others "every few days" doing things like "sit and talk, watch tv, listen to music, some

computer".  Id., p. 253.  He indicated he has "problems getting along with family, friends,

neighbors and others" because "sometimes people play [too] much, joking and messing around

and I get upset".  Id.  He stated that since his conditions began, changes in his social activities

are that he is "less talkative, sensitive about my condition when people want me to talk about it".

Id.

During his consultative examination with Dr. Lin, plaintiff "reported he feels

people talk about him" and "can look at him through computers and it could be anyone including

-10-

the government". <u>Id.</u>, p. 373.  Dr. Lin observed that plaintiff "is often resistant to answer

questions". <u>Id.</u>  She observed further that plaintiff's "demeanor was defensive, hostile, irritable"

and his "[m]anner of relating was poor, he often questioned why I asked all those questions and

symptoms, and reported feeling being interrogated". <u>Id.</u>  She noted that plaintiff's thought

processes were "coherent and goal-directed", but that "paranoia was evident as he said I asked

questions that would set him up". <u>Id.</u>  His affect was "agitated", and his mood was "irritable".

<u>Id.</u>  Although plaintiff "reported a good relationship with his family and children", he "has no

friends". <u>Id.</u>, p. 374.  These observations culminated in Dr. Lin's opinion that plaintiff was

"markedly limited" in "relating adequately with others". <u>Id.</u>, pp. 374-75.

      Dr. Toor did not comment concerning plaintiff's level of cooperation during his

consultative examination, however, Dr. Toor was able to obtain a medical and social history and

conduct a physical examination.

      I agree with plaintiff that "an ability to maintain friendships or visit a doctor does

not undercut an opinion regarding social limitations".  Plaintiff's Memorandum of Law [18-1], p.

22; *see also* <u>Rodriguez v. Astrue</u>, 2009 WL 637154, *22 (S.D.N.Y. 2009) ("the ability to get

along with family and friends does not necessarily mean a person is not limited in social

functioning generally"); <u>Chapman v Colvin</u>, 2017 WL 382173, *5 (W.D.N.Y. 2017) ("that

Chapman can respond appropriately to doctor in controlled, medical settings does not necessarily

contradict Dr. Sarakanti's conclusion that Chapman's ability to interact appropriately with the

general public is between 'fair' and 'poor'").  In addition, ALJ Fuller's assertions concerning the

record appear to be factually incorrect.  At best, plaintiff's statements concerning his ability to

get along with others was not as unequivocal as stated by the ALJ, nor did ALJ Fuller discuss

plaintiff's contrary statements.  Finally, ALJ Fuller was mistaken that Drs. Lin and Toor were the

plaintiff's own treating providers.  Nor does ALJ discuss any of the multiple instances in Dr. Lin's report or in records from plaintiff's treating providers that note plaintiff was <u>not</u> cooperative.

However, even if ALJ Fuller erred in her analysis of the marked limitation opined by Dr. Lin, remand on this record would serve no purpose.  Where remand, despite an error, could lead only to the same conclusion, remand is not required.  *See* <u>Zabala v. Astrue</u>, 595 F.3d 402, 409 (2d Cir. 2010) ("[r]emand is unnecessary, however, where application of the correct legal standard could lead to only one conclusion") (internal quotation and citation omitted). ALJ Fuller incorporated into the RFC a limitation to "occasional interaction with the public".  A limitation to "occasional" interaction "address[es] Dr. Lin's opinion that Plaintiff is markedly limited in relating adequately with others".  <u>Kya M. v. Commissioner</u>, 506 F.Supp.3d 159 (W.D.N.Y. 2020).  Even had ALJ Fuller extended this limitation to interactions with coworkers and supervisors, plaintiff's occupational base for unskilled work would have remained intact. *See* <u>Jack B. v. Commissioner</u>, 2021 WL 780303, *5 (W.D.N.Y. 2021) ("[a] 'marked' limitation in an area of mental functioning is not necessarily disabling"); <u>Fiducia v. Commissioner</u>, 2015 WL 4078192, *4 (N.D.N.Y. 2015) ("[t]he fact that plaintiff was found to have a marked limitation interacting with others does not conclusively demonstrate that she is unable to work, particularly given the fact that the ALJ limited plaintiff to work that does not require more than occasional interaction with the public and co-workers").

"Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ".  <u>Beaman v. Commissioner</u>, 2020 WL 473618, *6 (W.D.N.Y. 2020). Plaintiff fails to articulate what additional limitations the ALJ failed to include in the RFC.  Nor

does plaintiff identify any evidence in the record that satisfies his burden to prove more restrictive limitations than those opined by Dr. Lin.

Accordingly, on this record, even if ALJ Fuller erred in her analysis of Dr. Lin's opinion, that error was harmless.

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [18] is denied, and the Commissioner's motion for judgment on the pleadings [19] is granted.

**SO ORDERED**.

Dated: August 23, 2021                        /s/ Jeremiah J. McCarthy
                                              JEREMIAH J. MCCARTHY
                                              United States Magistrate Judge